JOURNAL ENTRY and OPINION
{¶ 1} Appellant Savas Koumonduros appeals his conviction for public indecency. He assigns the following two errors for our review:
"I. The trial court erred to the prejudice of defendant-appellant when it convicted him of public indecency."
"II. Defendant-appellant was unduly prejudiced by ineffective assistance of counsel."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Koumonduros' conviction. The apposite facts follow.
 {¶ 3} Koumonduros was cited by Parma police for two counts of public indecency in violation of Parma Ord. 666.06.[1] The matter proceeded to a bench trial.
 {¶ 4} Gary Krusinksi testified that on March 22, 2004 at approximately 6:15 p.m., he was leaving a tanning salon located in Parma. He walked past the driver's side window of a car parked near the back entrance of the salon, and saw the driver's genitals were exposed and he was stroking his penis. Although the man had a newspaper covering the steering wheel, it did not obscure Krusinski's view. He failed to call the police because he was so "rattled" by the incident.
 {¶ 5} On March 24, 2004, Krusinski returned to the tanning salon. He again saw the car parked in the same location with the same man sitting inside. When he entered the tanning salon, he asked the employees if they noticed the car. He was informed that the man was a "weirdo," who had been parked there for the last two hours. When he told the employees that several days earlier he observed the man masturbating, they called the police. At trial, Krusinski identified Koumonduros as the man he saw.
 {¶ 6} Officer Farinacci testified that on March 24, 2004, he responded to a radio broadcast concerning suspicious activity in the parking lot of the tanning salon. As he approached the parked car, he saw Koumonduros cupping his crotch area and leaning forward. Koumonduros quickly fastened his pants when the officer inquired what he was doing. He informed the officer he was waiting for his girlfriend, but gave no answer as to where the girlfriend was. Officer Farinacci learned from the tanning salon employees that Koumonduros had been parking in that same spot for the past two weeks. The salon manager stated that several female customers had previously advised her that a man was masturbating in the parking lot.
 {¶ 7} Officer Galinas testified that a background check on Koumonduros revealed he had a prior conviction for public indecency. The prior offense elevated Koumonduros' public indecency charges from fourth degree misdemeanors to third degree misdemeanors.
 {¶ 8} Koumonduros testified in his own defense. He stated that he was in the parking lot on the dates in question, waiting for a woman with whom he had casual sex. She frequented the nail salon located next to the tanning salon. He did not know the woman's name nor her telephone number. He could not explain why Krusinski testified he was masturbating. He stated, however, that he had a spine injury, which caused him discomfort in his groin area.
 {¶ 9} The trial court found Koumonduros guilty of the March 22 public indecency charge; but acquitted him of the March 24 charge. He was sentenced to two years community control sanction.
 ADMISSION OF EVIDENCE IN VIOLATION OF EVID.R. 608 AND 609 {¶ 10} In his first assigned error, Koumonduros argues the trial court should not have permitted evidence regarding his prior conviction for public indecency because such evidence violated Evid. R. 608 and 609.
 {¶ 11} Koumonduros' prior conviction was not used to impeach Koumonduros, but to elevate the degree of the charged offenses; therefore, Evid.R. 608 and 609 are not applicable. The Ohio Supreme Court has held that when the prior conviction elevates the degree of the subsequent offense, it is an essential element of the subsequent offense and may not be bifurcated from the remainder of the elements of the subsequent offense.[2] When a previous conviction is an element of the offense, the state must prove the fact of the prior offense beyond a reasonable doubt.[3] Thus, the trial court did not err by allowing evidence of Koumonduros' prior conviction. Koumonduros' prior conviction elevated the public indecency charges from fourth to third degree misdemeanors.
 MANIFEST WEIGHT OF THE EVIDENCE { ¶ 12} In a subpart of his first assigned error, Koumonduros argues his conviction was against the manifest weight of the evidence because Krusinski was not a credible witness. {¶ 13} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins:[4]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594. "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 14} Koumonduros contends that Krusinski's testimony that from his rear view mirror, he could see Koumondorus masturbating, was not credible. However, that was not Krusinski's testimony. He testified that, while walking past the driver's side of Koumonduros' car, he saw him masturbating. Once in his own car, Krusinski looked into his rear view mirror and saw Koumondorus looking back at him.
 {¶ 15} He also argues that Krusinski's credibility was compromised because he did not immediately notify police as to what he had observed. We conclude that Krusinski's credibility was for the trial court to discern. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[5] Accordingly, on issues of credibility, we defer to the trial court, which was the trier of fact in the instant case. Koumonduros' first assigned error is overruled.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 16} In his second assigned error, Koumonduros contends his counsel was ineffective.
 {¶ 17} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[6] UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[7] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[8] Judicial scrutiny of a lawyer's performance must be highly deferential.[9]
 {¶ 18} Koumonduros first contends that counsel was ineffective for failing to object to leading questions by the prosecutor during the direct examinations of Krusinski and Officer Farinacci. We note that Evid.R. 611(C) does not strictly forbid leading questions, but states "leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This exception is broad and it is within the trial court's discretion to allow the use of leading questions.[10]
 {¶ 19} Furthermore, in State v. Keene[11] the Ohio Supreme Court recognized the decision not to interrupt a prosecutor's argument with objections, especially in a bench trial, can be part of sound trial strategy and does not constitute ineffective assistance of counsel.
 {¶ 20} Even if the failure to object had constituted ineffective assistance of counsel, it was not prejudicial. Krusinski's testimony in response to the non-leading questions provided sufficient evidence to support the March 22 charge.
 {¶ 21} Koumonduros also contends counsel was ineffective for failing to object to the hearsay testimony offered by Officer Farinacci. The officer testified that the manager of the tanning salon informed him that several customers had previously advised her that a man was masturbating in the parking lot. Although these statements constituted hearsay, their admission was not prejudicial. The City presented sufficient evidence of Koumonduro's guilt without this evidence. Krusinki's testimony along with Officer Farinacci's other statements provided sufficient evidence in support of the charge.
 {¶ 22} Koumonduros also argues that counsel was ineffective for failing to move for acquittal on the March 22 public indecency charge. Counsel moved for acquittal only on the second charge. We conclude this was not error. Krusinski's testimony provided sufficient evidence to overcome a motion for acquittal on the March 22 charge. Therefore, no prejudice resulted.
 {¶ 23} Because we conclude that Koumonduros' claims of ineffectiveness of counsel were without merit, counsel was not ineffective for failing to file a motion for a new trial based on those allegations. Accordingly, Koumonduros' second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Rocco, J., Concur.
[1] He was also cited for driving with a suspended license, to which he later pled no contest to an amended count of no operator's license.
[2] State v. Allen (1987), 29 Ohio St.3d 53, 54; State v. Henderson
(1979), 58 Ohio St.2d 171. See, also, State v. Swiger (1987),34 Ohio App.3d 371; State v. Ireson (1991), 72 Ohio App.3d 235; Statev. Arnold (Jan. 24, 2002), Cuyahoga App. No. 79280.
[3] State v. Ireson, supra at 237.
[4] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[5] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[6] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[7] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[8] Id. at paragraph two of syllabus.
[9] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[10] See, e.g., State v. Lewis (1982), 4 Ohio App.3d 275; State v.Timperio (1988), 38 Ohio App.3d 156.
[11] (1998), 81 Ohio St.3d 646, 668.